U.S. Department of Homeland Security
Washington, DC 20472

FEMA

September 18, 2026

MEMORANDUM FROM: Pamela S. Williams
Deputy Assistant Administrator (Acting)
Grant Programs Directorate

PAMELA S WILLIAMS Digitally signed by PAMELA S WILLIAMS Date: 2026.09.18 09:59:55 -04'00'

SUBJECT: Further Reasoning Regarding Fiscal Year 2026 FEMA Non-Disaster Grant Program Term and Condition Determinations.

---

On September 11, 2026, Federal Emergency Management Agency Administrator Cameron Hamilton sent a memorandum to the Secretary of the Department of Homeland Security titled "Fiscal Year 2026 FEMA Non-Disaster Grant Program Term and Condition Determinations."

This memorandum provides further explanation to the rationale underlying the decision whether to apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The Federal Emergency Management Agency (FEMA) assessed the following non-disaster grant programs and proposes to implement the following approaches for implementing the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on grant awards issued in Fiscal Year 2026.

**1. Biowatch**

FY 2026 Funding Amount: $35,000,000

Purpose: Designed to detect aerosolized biological attacks by continuously monitoring the air for specific biological threats using strategically placed air collectors.

Award Criteria: Cooperative agreement; 30 jurisdictions pre-identified; eligible applicants are assessed based on their experience and technical approach.

Nexus: Early detection of biological terrorism.

Analysis: This program monitors air quality in major metropolitan areas to provide early warning of biological attacks. Because it is designed to detect biological warfare agents, it has a direct and critical national security mission focused on preventing and responding to acts of terrorism.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: BioWatch assists state and local governments to build capabilities for detecting the presence of biological agents for prevention of their use in a terrorist attack or to assist in the response to such attack. The program protects communities from the risk that an individual immigrating illegally would seek to import or use biological agents or nuclear materials for the purpose of terrorism. The purposes of these programs could be undermined if the Department were to award funds to local governments that are violating federal statutes and policies designed to support immigration law enforcement to protect national security. In creating DHS, Congress expressly found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attacks." 6 U.S.C. § 481 (b)(2).

This is particularly true as to information sharing. The 9/11 Commission expressly recognized failures in information sharing between law enforcement agencies as a cause of terrorist attacks. Its Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." 9/11 Commission Report at xvi. Similarly, in creating DHS, Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481 (b)(8).[1]

**2. Emergency Management Performance Grant Program**

FY 2026 Funding Amount: $337,250,000

Purpose: To assist State, local, tribal, and territorial governments "in preparing for all hazards" and all phases of emergency management.

Award Criteria: Allocations to each State based on a statutory formula.

Nexus: All-hazards emergency preparedness and operational coordination.

Analysis: The Emergency Management Preparedness Grant Program (EMPG) supports State and local efforts to build a comprehensive emergency management system. This includes preparedness and response coordination for man-made disasters, security threats, and acts of terrorism, which directly aligns with national security objectives.

[1] Based on direction from the Department, the September 11 memo does not reference BioWatch because it was already implied that the DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" applies to the BioWatch program.

Approach. Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: There is a rational relationship between the purpose of the EMPG to fund support for State and territory emergency management and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The EMPG is statutorily authorized "to assist State, local, and tribal governments in preparing for all hazards." 6 U.S.C. § 762(b). The term "hazard," as defined by the Stafford Act, encompasses "an emergency or disaster resulting from a natural disaster or an accidental or man-caused event." 42 U.S.C. § 5195a(a)(1). Emergency preparedness, in turn, is defined to include "all activities and measures designed or undertaken to prepare for or minimize the effects of a hazard upon the civilian population [and] to deal with the immediate emergency conditions which would be created by the hazard." 42 U.S.C. § 5195a(a)(3). Accordingly, the statutory framework of EMPG clearly contemplates and authorizes the use of grant funds for the preparation and mitigation of hazards that affect national security, whether those hazards arise from natural causes or are the result of human actions.

Both the EMPG program and the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" are designed to address hazards that implicate national security, including those arising from unchecked immigration and border-related crises. On January 20, 2025, President Trump issued a proclamation declaring a national emergency at the southern border of the United States, citing widespread violence, narcotic trafficking, gang activity, terrorist threats, and the urgent need to prevent the entry of illegal aliens into the United States. (https://www.whitehouse.gov/presidential-actions/2025/01/declaring-a-national-emergency-at-the-southern-border-of-the-united-states/). This declaration underscores the nexus between immigration enforcement and national security, as well as the necessity for State and local governments to cooperate with federal authorities in addressing these hazards.

The EMPG program permits the use of funds to plan and prepare for hazards directly impacting national security. The Fiscal Year 2026 EMPG Notice of Funding Opportunity (NOFO) explicitly allows grant recipients to use funds for the development of Emergency Operations Plans, Public Alert and Warning System Plans, Communications Plans, Administrative Plans, Resource Management Plans, Shelter and Evacuation Plans, Recovery Plans, and Continuity Plans. These planning activities are intended to enhance preparedness for a wide range of hazards, including terrorist attacks, natural disasters, civil unrest, and other threats to national security.

EMPG funds may also be used to support emergency management-related training activities, thereby enhancing the capabilities of State and local emergency management personnel. Such training may include instruction and exercises related to the management of emergencies that implicate national security and associated hazards. Moreover, EMPG funds are available for construction and renovation projects for principal Emergency Operations Centers (EOCs) operated by State, local, tribal, or territorial governments. These EOCs serve as the central hub for coordinating responses to all hazards, including those related to national security and law enforcement.

The statutory purpose of EMPG program may be undermined if States and local governments receive grant funds to protect against threats to national security but simultaneously refuse to coordinate or share information with the Department of Homeland Security regarding law enforcement matters, including immigration enforcement. Such refusal may constitute a violation of applicable federal statutes and frustrate the objectives of the EMPG program by impeding the effective management of hazards that threaten national security. Therefore, the imposition of the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” on EMPG awards is legally permissible and justified by the statutory nexus between emergency management, law enforcement, and national security.

### 3. State Homeland Security Program

FY 2026 Funding Amount: $373,500,000

Purpose: Assists States and local and tribal governments in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Statutory minimum allocation for each State with remaining awarded based on risk calculated using statutory criteria.

Nexus: Terrorism preparedness and law enforcement coordination.

Analysis: The State Homeland Security Program (SHSP) explicitly funds State and local capabilities to prevent, prepare for, protect against, and respond to acts of terrorism. It heavily funds Law Enforcement Terrorism Prevention Activities (LETPA), establishing a nexus to law enforcement and national security.

Approach. Apply the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” to future grant awards.

Rationale: FEMA could impose this condition because there is a rational relationship between the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” and the purpose of the program to assist States, territories, and local and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.

The SHSP statute establishes that the program’s purpose is to “to assist State, local, and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.” 6 U.S.C. 605(a). Funds are allocated based on each jurisdiction’s “relative threat, vulnerability, and consequences from acts of terrorism” and “anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism.” 6 U.S.C. 608(a).

In addition, the statute requires “that not less than 25 percent of the total combined funds appropriated . . . is used for law enforcement terrorism prevention activities.” 6 U.S.C. 607(a)(1).

This can include: information sharing and analysis; target hardening; threat recognition; terrorist interdiction; training exercises to enhance preparedness for and response to mass casualty and active shooter incidents and security events at public locations, including airports and mass transit systems; overtime expenses consistent with a State homeland security plan, including for the provision of enhanced law enforcement operations in support of Federal agencies, including for increased border security and border crossing enforcement; establishing, enhancing, and staffing with appropriately qualified personnel State, local, and regional fusion centers; paying salaries and benefits for personnel, including individuals employed by the grant recipient on the date of the relevant grant application, to serve as qualified intelligence analysts; and any other terrorism prevention activity authorized by the FEMA Administrator. 6 U.S.C. 607(a)(2).

For FY 2026, the Homeland Security Grant Program (HSGP) NOFO, which covers SHSP, includes five high-impact security focus areas, known as national priority areas (NPAs). These are: (1) enhancing the protection of soft targets and crowded places; (2) supporting Homeland Security Task Forces and fusion centers; (3) enhancing and integrating cybersecurity resiliency; (4) enhancing election security; and (5) Supporting border crisis response and enforcement. All of the FY 2026 NPAs support law enforcement and national security activities and are designed to direct funds to projects that most effectively effectuate the grant's terrorism prevention purpose.

The fifth NPA, supporting border crisis response and enforcement, also unscored the nexus between the statutory purpose of SHSP and immigration activities. In fact, the NOFO states that activities that support the NPA may include: participation in the Department of Homeland Security/Immigration and Customs Enforcement 287(g) training program; cooperation with Immigration and Customs Enforcement detainers; and other jurisdictional responsibilities to support the enforcement of United States immigration law.

Moreover, the purpose of a SHSP grant is potentially frustrated if a State, territory, tribe, or local government receives a grant to protect against a threat to national security from terrorism while that same State or territory refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

### 4. Urban Area Security Initiative

FY 2026 Funding Amount: $553,500,000

Purpose: Financial assistance to high-risk urban areas in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Awards based on risk calculated using statutorily required criteria. Discretion in determining how many high-risk urban areas shall receive funding through a State, but that discretion is often limited or guided by Congress through the annual appropriations process.

Nexus: High-threat urban area protection.

Analysis: The Urban Area Security Initiative (UASI) targets high-density, high-threat metropolitan areas to build capability to respond to terrorist attacks. Its sole purpose is terrorism prevention and response in vulnerable target zones, establishing a nexus to law enforcement and national security.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides discretion in how to evaluate risk according to statutory factors and make award decisions. FEMA, accordingly, could impose this condition on States receiving grant awards because there is a rational relationship between the purpose of the UASI to assist State, local, and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The UASI statute establishes that the program's purpose is "to provide grants to assist high-risk urban areas in preventing, preparing for, protecting against, and responding to acts of terrorism." 6 U.S.C. 604(a). Funds are allocated based on each jurisdiction's "relative threat, vulnerability, and consequences from acts of terrorism" and "anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism." 6 U.S.C. 608(a).

In addition, the statute requires "that not less than 25 percent of the total combined funds appropriated . . . is used for law enforcement terrorism prevention activities." 6 U.S.C. 607(a)(1). This can include: information sharing and analysis; target hardening; threat recognition; terrorist interdiction; training exercises to enhance preparedness for and response to mass casualty and active shooter incidents and security events at public locations, including airports and mass transit systems; overtime expenses consistent with a State homeland security plan, including for the provision of enhanced law enforcement operations in support of Federal agencies, including for increased border security and border crossing enforcement; establishing, enhancing, and staffing with appropriately qualified personnel State, local, and regional fusion centers; paying salaries and benefits for personnel, including individuals employed by the grant recipient on the date of the relevant grant application, to serve as qualified intelligence analysts; and any other terrorism prevention activity authorized by the FEMA Administrator. 6 U.S.C. 607(a)(2).

For FY 2026, the HSGP NOFO, which covers UASI, includes five high-impact security focus areas, known as national priority areas (NPAs). These are: (1) enhancing the protection of soft targets and crowded places; (2) supporting Homeland Security Task Forces and fusion centers; (3) enhancing and integrating cybersecurity resiliency; (4) Enhancing election security; and (5) Supporting border crisis response and enforcement. All of the FY 2026 NPAs support law enforcement and national security activities and are designed to direct funds to projects that most effectively effectuate the grant's terrorism prevention purpose.

The fifth NPA, supporting border crisis response and enforcement, also unscored the nexus between the statutory purpose of SHSP and immigration activities. In fact, the NOFO states that activities that support the NPA may include: participation in the Department of Homeland Security/Immigration and Customs Enforcement 287(g) training program; cooperation with Immigration and Customs

Enforcement detainers; and other jurisdictional responsibilities to support the enforcement of United States immigration law.

Moreover, the purpose of an UASI grant is potentially frustrated if a State receives a grant award to protect against a threat to national security from terrorism while that same State refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information and hindering federal law enforcement have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

**5. Operation Stonegarden**

FY 2026 Funding Amount: $81,000,000

Purpose: Operation Stonegarden funds target expenditure by local governments for the purpose of border protection and border security.

Award Criteria: Discretionary, competitive awards to States with 100 percent of funds sub-awarded to local law enforcement. The Department adopts the requirement for competition and criteria for this award that is provided for in the legislative history of the appropriations act funding the program.

Nexus: Border security and joint law enforcement operations.

Analysis: Operation Stonegarden is designed to enhance cooperation among local, State, tribal, and federal law enforcement agencies to secure international land and water borders. This directly involves immigration enforcement support and border security operations, creating a direct nexus to immigration activities. While this program was a "green" program in 2025, FEMA recommends this program be designated as a "red" program in 2026.

Operation Stonegarden is designed to improve cooperation among law enforcement agencies to secure the international borders of the United States. Grant-funded activities depend on coordination, information sharing, joint planning, and operational cooperation across levels of government. Recipients and subrecipients that restrict communication or cooperation with DHS or immigration officials could impede information sharing, create operational gaps, undermine joint planning, and reduce the effectiveness of border security operations.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides discretion to make grant awards.

FEMA, accordingly, could impose this condition on receiving grant awards because there is a rational relationship between the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration

Officials" and the purpose of the program to assist States, territories, and local and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.

Operation Stonegarden is governed by 6 U.S.C. §§ 603, 605–609, which requires a nexus exist between the use of the funds and preventing, protecting against, preparing for, or responding to acts of terrorism. Funds are allocated based on each jurisdiction's "relative threat, vulnerability, and consequences from acts of terrorism" and "anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism." 6 U.S.C. 608(a).

The purpose of Operation Stonegarden is potentially frustrated if a State, territory, tribe, or local government receives a grant to protect against a threat to national security from terrorism while that same State or territory refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

### 6. Port Security Grant Program

FY 2026 Funding Amount: $95,000,000

Purpose: Assistance to port authorities, facility operators, and state and local governments for maritime transportation infrastructure security.

Award Criteria: Statute requires that funds be allocated based on risk, but otherwise discretionary.

Nexus: Maritime critical infrastructure protection.

Analysis: The Port Security Grant Program (PSGP) builds security capabilities at maritime ports of entry, which are vital border locations. Protecting these boundaries and supporting maritime law enforcement activities establishes both a national security and a border enforcement nexus.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards to States, territories, or local governments.

Rationale: The statute requires the allocation of funding based on risk, but otherwise provides discretion to the Department to establish additional grant conditions related to risk and the purpose of the program. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on receiving grant awards as there is a rational relationship between the purpose of this program and the purpose of the term.

This is because the purpose of the program is potentially frustrated if the Department awards grants funds to a State, territory, or local government to protect against threats to maritime transportation infrastructure while that same State, territory, or local government refuses to coordinate and share

information with the Department related to law enforcement, including by violating applicable federal statutes and taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to reduce risk to maritime transportation infrastructure.

### 7. Homeland Security National Training Program – Continuing Training Grants Competitive

FY 2026 Funding Amount: $5,700,000

Purpose: To help training partners develop and deliver training to prepare whole communities to prevent, protect against, mitigate, respond to, and recover from acts of terrorism, and natural, man-made, and technological hazards.

Award Criteria: Discretionary, no statutory award criteria. Per the Fiscal Year 2026 NOFO, the Joint Explanatory Statement accompanying the Fiscal Year 2026 DHS Appropriations Act (Pub. L. No. 118-47) directs Continuing Training Grants to be competitively awarded for FEMA-certified rural and tribal training.

Nexus: Responder capability building for countering terrorism and other security threats.

Analysis: This program funds targeted training for first responders and law enforcement on handling active threats, weapons of mass destruction, and tactical responses. Building these specialized law enforcement capabilities directly supports national counter-terrorism efforts.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards.

The awarding of funds under the Program is discretionary without any statutory award criteria. Thus, FEMA has substantial discretion to design the grant program, establish substantive grant conditions, establish eligibility criteria, and establish evaluation criteria. FEMA, accordingly, could apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" as there is a rational relationship between the Program's purpose (as designed by FEMA to provide training to prepare for, respond to, and recover from all hazards in furtherance of the National Preparedness Goal and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

This is because the purpose of a grant would be frustrated if States, territories, and local governments delivering training are, in turn, violating federal statutes and not taking other actions designated to support immigration law. Immigration enforcement relates to national security and all-hazards preparedness training by States, territories and local governments—which will include training concerning law enforcement emergencies—who do not treat all aspects of national security seriously will be less effective.

For example, a local government county recipient may conduct training under a grant to its respective local governments on responding to a law enforcement emergency. If the recipient deemphasizes full collaboration with federal law enforcement when conducting the training, there could be an increased risk of unaddressed vulnerabilities in the trained local government, especially in areas like counterterrorism. This, in turn, would compromise the all-hazards preparedness of the trained community, which is what the grant program is aiming to protect

**8. Regional Catastrophic Preparedness Grant Program**

FY 2026 Funding Amount: $11,400,000

Purpose: Supports the building of core capabilities essential to achieving the National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts.

Award Criteria: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

Nexus: Catastrophic threat management.

Analysis: The Regional Catastrophic Preparedness Grant Program focuses on regional coordination to manage large-scale catastrophic incidents, including major terrorist attacks. This large-scale readiness is essential for national continuity and homeland defense.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides very broad discretion in setting the purpose of the program, establishing substantive conditions, establishing eligibility criteria, and establishing evaluation criteria. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on receiving grant awards as there is a direct relationship between the purpose of the program of national preparedness and security and the purpose of the term.

This is because the purpose of the program is frustrated if the Department awards grants funds to a State, territory, or local government to build State, territory, or local government capacity to manage catastrophic incidents by improving and expanding regional collaboration among emergency managers and federal, preparedness stakeholders and that same recipient, in turn, refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes.

**9. Transit Security Grant Program**

FY 2026 Funding Amount: $88,350,000

Purpose: This program provides funds to public transit agencies to protect critical surface transportation infrastructure and the traveling public from acts of terrorism.

Award Criteria: Discretionary, competitive awards based on statutory criteria that require prioritization of funding based on risk.

Nexus: Transportation infrastructure security.

Analysis: The Transit Security Grant Program (TSGP) protects surface transportation systems and travelers from acts of terrorism. Because it focuses on safeguarding public soft targets through law enforcement and security enhancements, it directly supports national security.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

The statute does not set forth a mandatory formula for distribution, but rather provides discretion in how to evaluate risk and make award decisions based on that risk. The statute also provides discretion to determine the requirements for recipients and establish priorities for how grant funds may be used. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" because there is a rational relationship between the purpose of the term and the purpose of the grant to improve the security of public transportation infrastructure.

This is because the purpose of the TSGP grant is frustrated if a State, territory, or local government public transportation agency recipient receives a grant award to make security improvements to public transportation infrastructure, in turn, refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes and taking other actions designed to hinder immigration law enforcement. For example, one of the authorized statutory uses of grant funds are operational costs, including reimbursement of State, territory, and local governments for costs for personnel assigned to full-time or part-time security or counterterrorism duties related to public transportation. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve increased security of public transportation infrastructure.

**10. Securing the Cities**

FY 2026 Funding Amount: $12,600,000

Purpose: Securing the Cities (STC) reduces the risk of a successful deployment of nuclear or radiological weapons against 14 major metropolitan areas in the United States. This grant program assists State and local partner agencies as they build regional capabilities to detect, analyze, and report nuclear and other radioactive materials.

Award Criteria: Cooperative agreement; 14 pre-identified major metropolitan areas based on risk.

Nexus: Radiological and nuclear threat detection.

Analysis: STC operates in high-risk urban areas to detect and prevent unauthorized attempts to use nuclear or radiological materials. This is a high-level counter-terrorism and national security initiative designed to prevent catastrophic attacks. The program's objectives include providing resources to enhance detection, analysis, communication, and coordination to better integrate state, local, tribal, and territorial assets into Federal operations. The STC program assists state and local governments, primarily law enforcement and other first responders, in building capabilities to detect the presence of unregulated radiological and nuclear materials to prevent their use in a terrorist or other deliberate attack.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” to future grant awards.

Rationale: STC protects communities from the risk that an individual immigrating illegally would seek to import or use biological agents or nuclear materials for the purpose of terrorism. The purposes of these programs could be undermined if the Department were to award funds to local governments that are violating federal statutes and policies designed to support immigration law enforcement to protect national security. In creating DHS, Congress expressly found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attacks." 6 U.S.C. § 481 (b)(2).

This is particularly true as to information sharing. The 9/11 Commission expressly recognized failures in information sharing between law enforcement agencies as a cause of terrorist attacks. Its Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." 9/11 Commission Report at xvi. Similarly, in creating DHS, Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481 (b)(8).